Good morning. May it please the Court, Counsel, I'd like to reserve three minutes for rebuttal. Billings claims the extraordinary power to search every part of Ms. Larvey, Ms. Vondra, and Ms. Podolak's property, every room, cabinet, and storage area, as frequently as its officers may desire, for compliance with any law, without a warrant. And you persuaded the judge with respect to the solo practitioner for a fair amount of that. I'm sorry, I didn't catch your question, Your Honor. You, I'm only saying that what you got out of the district judge was striking down the ordinance with respect to the solo practitioner for a fair amount of that. Yeah, yeah, so you succeeded to some degree already. Yes. Okay. And, you know, of course, this appeal concerns the part that we didn't. Exactly. The application to non-solo practitioners. And so the Fourth Amendment presumes this sweeping grant of power unreasonable, but Billings claims the benefit of what the Supreme Court has repeatedly characterized as a narrow exception. And Billings has not met its burden of showing the narrow, heavy, or closely regulated industry exception applies. Can you start with Kilgore and explain to me why Yeah, Kilgore doesn't control because it itself, its own text says that the holding is limited to California. It's pretty close, don't you think? Well, it certainly concerns massage therapy, but it, massage therapy practitioners in Montana don't have the same expectations of privacy as massage practitioners in California do. Kilgore itself acknowledged this when it said this holding applies to the practice of massage therapy in California. The regulatory scheme in California, much more detailed, and also, I mean, there's, at the time Kilgore was decided, there's 30 years, 30 years earlier, a California Supreme Court, or perhaps not the Supreme Court, a state court, had held that it is a closely regulated industry in Montana, or in California. And so we don't have that history in Montana. So it's a, it's not dispositive of this case. The district court didn't treat it as such. And, and so I'll make three points though, and this first one, special need. In Kilgore, the court didn't consider special need. It In this case, we bring a challenge to the programmatic purpose of these ordinances, which was lacking in Kilgore, and the special needs analysis fails here. This is a crime control measure. The second point I'll make is that massage therapy is not a closely regulated industry in Montana. And lastly, even if it were, that the searches authorized by the Billings Ordinance fail burger prong three scrutiny because they're practically unlimited in time, scope, and frequency. So Did Burger consider special needs? I'm sorry? Did Burger consider special needs? Burger, yeah, Burger did. It, it, the special need in Burger was the returning stolen car parts to their owners. And so there's a close connection between searching a junkyard, which may incidentally and without follow their deal on such stolen parts. With, with respect to the massage therapy ordinance in Billings, the Billings Ordinance, it's not searching for things that belong in massage parlors. It's searching for evidence of a crime. And we can just simply take the city at its word on this point. The police chief said at the adoption of this ordinance, this would be a great tool for law enforcement. It'll help us, quote, identify and arrest as many people as we can and that they've assigned a detective to follow up on any necessary follow-up after inspections under the ordinance. The city attorney likewise said this will save law enforcement resources because these types of cases take a lot of resources to investigate and probable cause for a warrant is hard to obtain. The city administrator said it'd be easier enforcing this ordinance than getting someone on money trafficking, money laundering or trafficking. And the code enforcement manager, when asked at deposition, what's a, what are your inspectors looking for during these searches? She says they're looking for things that don't belong in a massage parlor. Things like sex toys, lubricants, evidence of overnight accommodations. These are all, this is all evidence of a crime. Counsel, with respect to that, is there any sort of chain of custody control if they find these things? What are, what are they to do with them? Let's say your inspector that's not a police officer finds them. Are they working directly with the police? How, how, how does this play out? Well, the, I'll just point out that the ordinance itself authorizes law enforcement officials or code inspectors to conduct the inspection and so there's no explicit policy on it under the Billings Ordinance but, you know, I think we can assume that a law enforcement official conducting these inspections pursuant to the ordinance, which the ordinance by its own text allows, is probably going to follow his own department's procedures about the obtaining and collection of evidence and there's nothing in the ordinance precluding them from doing that. Of course, but I'm asking when it's not a police officer or a law enforcement professional. No, it doesn't spell out, you know, how, how, how exactly a code enforcement officer could turn this into a criminal case but... And that makes it different from the drug testing program in Ferguson, doesn't it? Well, it's, it's got less of, less than Ferguson as far as chain of custody, how to turn this into a criminal case, but the, the, the test is asking what the immediate objective of the search program is and whether that immediate objective is a purpose that is distinguishable from crime control and so... What is the immediate objection, objective? Of the Billings Ordinance? Yes. To discover sex trafficking, human trafficking, and sex crimes. That's, that's the city at its own word. That's what they say it's for and... What about protecting public health and safety? Yeah, it's for that too. I mean, it's a... That's not, that's not criminal. Yeah, it's not... Protecting public health and safety is not criminal, but the way the ordinance goes about it has to be distinguishable from a criminal purpose and that's what the case law holds. So, because it's not enough, I mean, you know, just in Ferguson, for example, the searching of pregnant mothers for, for drug use. I mean, what a, what a serious thing. Obviously, that's a, you know, it'd be great to protect the public health and safety by this measure, but it wasn't, it wasn't a special need. It's because it was too indistinguishable from the government's general interest in crime control. And so, with, with the Billings Ordinance, we have the same thing. The predominant purpose of the program is to discover evidence of criminal violations. That's what everybody says about it, and it's what, it's what's revealed by the text of the ordinance, too. The ordinance says that, Section 1 of the ordinance says that its purpose is to regulate businesses that purport to be massage therapy businesses, and businesses that purport to be massage therapy businesses. It's not even aimed at the actual industry. There are three factors that are relevant to the closely regulated industry analysis. Pervasiveness, duration, or history, and, and danger. And the key point of this analysis is what effect the regulatory scheme has on the proprietors' expectations of privacy. And so, merely being subject to myriad regulation isn't enough. In the city of Los Angeles versus Patel, a case that came to the Supreme Court ten years ago, we were dealing with the in-keeping industry. And we know the in-keeping industry, as lawyers, has been subject to special laws, special duties under the law for centuries, and, and certainly in California, subject to extensive regulation. Well, in Patel, the Supreme Court said that industry's not closely regulated. And they said that because there was no history of warrantless searches of the industry. And so, it's, it's not enough to just point to a bunch of regulations. And, in Montana, we have, unlike California, in Kilgore, with, with Kim versus Dolch, that 30-year-old decision concerning a warrantless search. In Montana, we have a complete lack of history of warrantless searches. The only thing Billings can point to is a 2019 state law authorizing a license check. So, authorizing somebody to come in and see that the license for the massage therapist is conspicuously displayed. I think in order, I think the case law says, for you to prevail, you've got to show, and I'm just reading from one of our cases, that the search has, as its primary purpose, the uncovering of evidence of ordinary criminal, criminal wrongdoing. So, it may well have the side effect, and it may have the beneficial side effect. Does it have, can you show that these, these, this administrative search has, that is its primary purpose, the uncovering of evidence of criminal behavior? Yeah, I think, I think that is the test. Well, I, I would clarify, though, that it's the, the city is, is the one claiming the benefit of this exception. And the Supreme Court said in Patel that the city has the burden of showing the exception applies. Yeah, but, but whoever has the burden, I think that's the test. Is that correct? That, that the, you've got to show, the primary purpose of the search program has to be, to uncover evidence of wrongdoing. It has to not be that to be a special need. Yeah, so you, so you, you, you, in order for you to prevail, you've got to show that the primary purpose of this is to uncover evidence of wrongdoing, correct? Well, I, I hope it's not semantical. I think Billings has to show that the primary purpose is, is the other way around. Okay, but that, but whoever has the burden of proof, that's the, that's the dividing line, whether, whether or not it's the primary purpose. Yes. Okay, yeah. So I want to move you to the Solos for a second. How could the Solos face unconstitutional conditions when they got exemptions, when they never had to agree to the searches of their homes? The, that, that the Solos are, are, are covered under the ordinance that the ordinance says that a massage, that an inspector can enter a massage therapy business. Right, but, so the, but your clients got exemptions, and so I'm trying to understand what the effect of the exemptions are, and how would they face an unconstitutional condition if they got the exemption? And you're just asking about the, the, the, the solo practitioner in the home. Exactly. Yeah. Well, Miss Podolak has to abide by Billings' ordinances, which provide for these inspections. What is the effect of the exemption? That's what I'm trying to understand. Oh, I think the, all that Billings explained what the effect of the exemption is, it wasn't to remove this obligation on Miss Podolak, and that's why the district court gave her relief, granted her summary judgment completely on her claim. Okay. Yeah, I think you have the same question, but it in a different way. Are you asking for Miss Podolak, the solo, for anything more than what she got already from the district court? No. Oh, so, so with respect to her, she's got what she wants. Yeah, she got complete relief. Yeah, so, so, so you're, the plaintiffs that you're still worried about are the non-solos? Yes. Okay, so, so Podolak's off the, off, off the table for, for our purposes of the bill? Yes. Okay. And so, in discussing, I guess I just want to go back to Your Honor's question about the exemption. Billings is saying that because solo practitioners are not a massage or spa facility under the ordinance, that they're not subject to the, the search provision, but the search provision provides that a massage therapy business has to permit the searches, and so a practitioner practicing in the home is a massage therapy business, even if it's not a massage and spa facility, and the language of the inspection provision says massage therapy business. Unless you read it as a business or a facility, unless you read those terms as interchangeable, I guess, in the ordinance. Yeah, I guess I just read the text of the ordinance, but anyway, I didn't want to evade Your Honor's question, but going back to closely regulated industry, so really the key here is what, what effect do these, does this regulatory scheme have on the proprietor's expectation of privacy, and, and there's nothing in Montana history showing a history of warrantless inspection of massage therapy businesses, so. Counsel, would you like to reserve your time? Yes. Okay. Thank you, Your Honor. Thank you. Mr. Fagan. Hello, Judge. Good morning. Good morning. May it please the Court, I am Gary Fagan, I'm a Billings, Montana lawyer, and I am defending the City of Billings in the Vondra case. I thought I would try to touch on the three main issues that I think that's before the Court, is the special needs issue, the closely regulated issue, and then the application that the District Court found to the practitioners. First, on special needs, I think it's very clear in the case law that the special needs exception is satisfied here by the, by the City. Down below, just to be clear, the City did argue about whether special needs was even applicable to the closely regulated exception. I think for purposes of the appeal, we don't need to worry about that, because I think it's not a dispositive issue for the plaintiffs. There clearly is a special needs, and it clearly is valid. The special need for the, the ordinance is to identify and eradicate illicit sex businesses. And I think it's important to note, and we, and we do have some facts in the record below that show that this ordinance has been very successful in getting rid of those businesses. And that was the purpose of the ordinance. Find and eradicate those businesses so they don't apply, because they know they're gonna be subject to inspections. And it's been successful in that. And the case law does specify that there can be an overlap between the ordinance's purpose and some criminal applications, as I'm sure the court knows. Just because there's a criminal aspect to the, to the inspections, or to the regulatory scheme, doesn't it make it unconstitutional. The Ferguson case shows you when there's the improper purpose that will not justify a special need. And that's far, far different than our case. I think counsel had said that he agreed that there was less than Ferguson that exists in, in the city ordinance on chain of custody. In fact, there's no chain of custody in the, in our ordinance. It's not just less than, it's completely gone. There's, there's no chain of custody, there's no evidence requirements, there's no discussion of charges by the Police Department. The only real application in the ordinance for the Police Department is they can be one of the inspectors that go in. They haven't to date, but they, they are available to do that. But when you look at the Ferguson case, and compare it to our case, it's a very, very different thing. And it's clear that this is, does not have an improper crime control purpose. I think it's important to note too that in Berger, the, the court did address special needs in that case. And the Berger plaintiff actually was arrested, and I think charged with five counts of receiving stolen property, because of the inspection, the warrantless inspection that was done pursuant to that scheme. That was still constitutionally valid. Master cases, which is a Ninth Circuit Court opinion, in Verdun also addressed those issues. In Verdun, I believe tickets were being issued because of the chalking scheme that was applicable in that case. That was all found to be constitutionally valid. So I think it's very clear that there's, there's not an improper crime control purpose on this statute. It's just to identify and eradicate illicit sex businesses. The second issue that, that I want to talk about, and I think it's the most important one, is whether this, whether massage therapy is closely regulated in Montana. And I do think the Kilgore analysis controls. Yes, but the analysis is the same. And, and I think that it's important to see what did, what the Kilgore court actually concentrated on, in deciding whether it was closely regulated or not. Because I think that when you do that, you realize that the, the, the Kilgore, the scheme that the Kilgore court looked at, and the scheme that's involved in the Bonder case, are very similar in the things that Kilgore concentrated on. And if you look at footnote number five in the Kilgore opinion, that's where the court specifies the things that it was considering to decide whether, whether massage therapy was closely regulated in Montana. They looked at things such as whether there are certifications, regulations for therapists, and regulation of the massage establishments, whether there is disciplinary issues or requirements that address the conduct of individuals providing massage, and whether there were regulations on the practitioners themselves limiting the, or looking for such things as does it limit the area of the bodies, of the body they may miss massage, and their attire. And so when you look at what the Kilgore court was looking at, and compare that to what's available in the Montana scheme, they're very, very similar. In, in California, in when Kilgore looked at it, there were licensing and certification requirements, there was a state board to govern the massage therapists, there were disciplinary procedures in place, there was a list of prohibited acts, and there were continuing education requirements. In Montana, there's the same, both between the Montana Code, Montana Administrative Regulations, and the ordinances. There's licensing requirements, there's a state board that governs the therapists, there's disciplinary requirements, there's prohibited acts, there's continuing education, and there's standards of practice. And the standards of practice are specified in administrative regulation, which is an addendum to our initial briefing on appeal. That's Administrative Reg 24.155.902. There's five pages of professional requirements there that I think are very important to look at. The Kilgore court, in addition to looking at the statewide regulations, also considered the ordinance at issue, to see if that was also helped to make it pervasively regulated. Kilgore looked at, you know, there's requirements in hours operation, there was prohibited conduct, there was cleanliness standards, advertising requirements, blocking of doors, and appearance of windows requirements. The city's ordinance has very, very much the same type of things. It has hours operation requirements, prohibited conduct, that prohibits at least 12 different types of conduct, there's advertising prohibitions, there's locking of doors, there's locking windows, they have to maintain an employee list on site, they must maintain a treatment logbook, so that can be reviewed to make sure that treatments are really being provided for actual massage therapy services. There has to be a list of services and prices, and they must maintain business records and financial records on site. All those things is what the Kilgore court looked at. They're all, they were present in Kilgore and they're present in our case. And that makes it, in my mind, an easy call on it that it is pervasively regulated in Montana, and I think the district court got that right. Talk to me, counsel, a little bit about the difference in time duration. So Kilgore, they were looking at 30 plus years, here we're looking at 12 years in Montana. Does it matter? Does it, you know, is it just one factor to consider? How much weight should we put on that? I think that's correct. I think it's one factor to consider. It's not a dispositive issue. I think Berger, if I recall right, I think the Berger court called it important or it has some relevancy, duration. So I think it is a factor that should be considered. But it's, there's not a bright-line rule on how many years you need to have, and it's not a dispositive rule. I know of no case that actually ruled industry was not closely regulated just based on duration alone. It's just a factor, but I think it's a smaller factor, certainly, than what the regulations entail. Was there anything that happened in 2019 that triggered this? I mean, there had been regulations and then there was a big gap of time. I'm just factually curious. Did anything happen in the city of Billings that, you know, prompted this? Well, let me go back, Judge. So the states had statewide regulations on massage therapists. I think for 29 of 50 of the past 55 years, there was a few breaks. Those were mostly licensing, certification, continuing education, disciplinary issues, all of which are things that the Kilgore court concentrate on. And then in 2009, they adopted a stronger code and added more administrative regulations that addressed the massage therapists. Those have been in place since 2009. Those have been over time and up to 2019 and 2020. In 2019, the state also adopted a statewide warrantless inspection for massage therapy businesses that allows an inspector to go into the building to look for licenses of all the therapists on site. And now is that, by its very nature, limited then? Because you want the licenses to be conspicuous. You want them to be out in front. So does that limit where an inspector can go search? It is limited to the extent that it's only to make sure that all the therapists on site have a license on hand. So they can enter the building to look for that. They can't look for other things. But the important part on that is, even though it's limited, it is a warrantless inspection and it does lessen the expectation a business owner will have on the privacy in their in their massage therapy business. Walk I don't see a license hanging on a wall. Can I start looking through drawers? The code doesn't specify that. It just specifies that they're allowed to enter to ensure compliance and requires that all therapists have a license conspicuously displayed somewhere in the facility. But by its very definition then, right? If it's in a drawer, it's not conspicuously displayed, correct? That's correct. And so that's why I'm asking, could I look through the drawers? Or does that already put me outside of what the warrant allows? Or the warrantless search, I'm sorry, allows? I think you'd be allowed to search for for the license if the license is conspicuous displayed and you have a therapist who's there providing services. That's the purpose of it, is to find whoever's on site as a therapist and make sure they have a license. Because that again is an idea. They're looking for the illicit sex businesses. So if it's not conspicuously displayed and you have somebody who's providing services, I think they're they're allowed to continue to search for that that license. And that's a statewide regulation. That's not a city ordinance. Why would they be allowed to continue to search once they've determined that it's not conspicuously displayed? That is to say there's already a violation. Whether or not it exists in a drawer, that's not conspicuously. So why can they continue to search? That's probably correct, Judge. It's not something, to my knowledge, that's come up that has been an issue. And the code does not specify. But the question then is really, of course, what kinds of searches preceded the ordinance that we now have? It sounds as though they were a little narrower. I agree with that. Yes, that's true. And then, Judge, you'd asked about what led to this in 2019-2020. Just what led to the city adopting the ordinance was that Billings has had a long history of illicit sex businesses in operating in massage therapy businesses. And this was a decision to try to stop that. To try to identify them and eradicate it. So it was just because of, I think, history and experience. And they realized it's very hard to eradicate with general law enforcement techniques because it generally requires, like, you know, undercover officers going in. And that's an inherent problem and it causes a lot of enforcement problems. This was a decision to try to eradicate those businesses in a different way. And it's entirely proper under a special needs test to do that because its primary purpose isn't to arrest somebody, it's to get rid of these businesses. Do you want to address any of the issues where the District Court went against you? Yeah, I think I should. And I'm running out of time, so I apologize. Just on duration, if I can real quick, I just note that, you know, Berger, I think the regulations were in place three years when the plaintiff was arrested. I think they were adopted in 1979. He's in spec 82 and he had five charges. Kilgore, they were in place three years, too. California had a previous statewide regime, but in 2014 they'd adopted the Massage Therapy Act. 2015, the city passed the ordinance and then the search was done in 2018. So those are very similar to timeframes that we're working with, although Montana's been regulating it for at least, you know, nine or ten. And before I forget, I do think it is extremely important for the court to look at the regulations, the administrative regulations. It's nine, I won't have time to go through it, but there's, it's 90.902. There's five pages of prohibited standards of practice in professional conduct and code of ethics things that, these are statewide regulations. These are very pervasive. They even address the necessary financial records. They address that you have to have generally accepted accounting principles and a long list of things that they can or can't do as a massage therapist. Yeah, and just to briefly address the issue with the solo practitioners, I think that the district court overall made a good decision, but the district court erred on the solo practitioners because the district court was misreading or misinterpreting the definition, the definitions at issue. And even the court, the district court even said that she only found that it impliedly or ostensibly seemed to apply to solo practitioners. So even the district court, I don't think, was firmly convinced that its analysis was correct. And the reason it was incorrect is because it was interpreting the difference between massage facility and massage business to be different. And they're not. The reason is there's a massage and spa facility definition that also exempts solo practitioners from that definition. And then the code also has the inspection requirement that applies to massage businesses rather than facilities. Is there any textual support for importing the 7-19-12 section to 7-19-10 and 19-11 for solos, which you were arguing there are certain provisions in 10 and 11 that shouldn't apply to solos based on the provision in 12. And I'm just wondering what support you would have for that. Well, I think solos are exempted from all inspection requirements under the ordinance based on the massage or spa facility definition. And where I think the court erred down below is finding a difference between the word facility and business. And facility actually uses the word business. It says massage or spa facility means any business providing spa services. Now, I'm a little confused. You're talking about error by the district court. Are you appealing? We've cross-appealed. Oh, I missed the cross-appeal. We cross-appealed just to the extent that the court found that the inspection requirements as a solo practitioner were overbroad. I'm sorry, I missed the cross-appeal. There's a lot of moving parts in this. So I just think if you look at the definition of massage facility, it says it means any business offering massage services. And that's exactly what a solo practitioner is doing. And so the next sentence or the next section in that facility exempts solo practitioners from that definition, meaning they're not subject to inspections in 19-12 because that applies to massage businesses. Okay. Thank you, counsel. It's okay. Thank you. Your Honor, I asked if the license check provision would allow a search beyond the conspicuous, somewhere where a license is conspicuously displayed, and it wouldn't. An officer who entered one of these businesses, just like the public can, he's not doing a search. Florida v. Jardines, Marshalls v. Barlows, these cases hold that inspectors can walk in, just like the public, to a building without affecting a search. Well, if the license isn't conspicuously displayed when he does that, you know, he has probable cause for a violation, and it wouldn't be grounds for a further search without a warrant. And there's also a question about the significance of the duration here, and, you know, whether 12 years in Montana is different than the many in California. And I'd just like to sharpen that question a little bit. Twelve years ago, Montana began licensing massage therapy as a business, as a the mere licensing of an occupation doesn't mean that the industry is closely regulated. And so the real question on duration is, what is the history of warrantless inspection of massage therapy businesses in Montana? And there's no history. And, you know, Berger, my opposing counsel points out that Berger only had three years. Well, the court in Berger looked at the centuries-long history of searching of pawn shops and junk dealers. We don't have that analog here. And so it's something the court has to take these factors together. And also Billings has said that the ordinance has been very successful. Well, they haven't conducted a single post-licensure inspection, and we don't challenge the inspections at the issuance of licensure. And so the ordinance is working without the constitutional violation. You are over time, counsel. Thank you, Your Honors. Okay, thank you. I'd like to thank both counsel on this matter. This matter is now submitted. And this concludes our arguments for this morning. Thank you again to all counsel and our court staff. The court will now stand in recess.
judges: FLETCHER, ALBA, Orrick